IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**CHRISTOPHER A. SMITH,**

    **Plaintiff,**

v.                                              **Civil Action No. 2:13-cv-00571**

**CAROLYN COLVIN,**
**ACTING COMMISSIONER OF THE**
**SOCIAL SECURITY ADMINISTRATION,**

    **Defendant.**


## PROPOSED FINDINGS AND RECOMMENDATIONS

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for supplemental security income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment of the Pleadings (ECF No. 11), a Brief in Support of Defendant's Decision (ECF No. 14) and Plaintiff's Response to Defendant's Brief in Support of Defendant's Decision (ECF No. 15).

Plaintiff, Christopher A. Smith, filed applications on July 18, 2007. In both applications, Claimant alleged disability beginning July 15, 2000. The claims were denied initially and upon reconsideration. Claimant filed a written request for hearing on May 5, 2008. A hearing was held in Charleston, West Virginia, resulting in an unfavorable decision dated October 10, 2008. The Administrative Law Judge (ALJ)

determined that Claimant was not entitled to benefits.  On October 14, 2008, Claimant requested a review by the Appeals Council.  The Appeals Council affirmed the decision of the ALJ with regard to the Title II portion of his claim.  The Appeals Council granted Claimant's request with regard to the Title XVI portion of his claim and remanded that portion on May 27, 2010 (Tr. at 184).[1]  The Appeals Council instructed the ALJ to further evaluate the nature and severity of Claimant's impairments; give consideration to nontreating source opinion and nonexamining source opinion and explain the weight given to such opinion evidence; give further consideration to Claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Claimant's occupational base (Tr. at 184-188).

The ALJ held a second hearing on May 24, 2011.  The ALJ issued a second decision on June 15, 2011, finding Claimant was not disabled (Tr. at 23-44). Considering Claimant's objections to the ALJ's second decision, the Appeals Council denied Claimant's request for review (Tr. at 1-5).  Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial

---

[1]The Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision.  The Appeals Council may also remand a case in which additional evidence is needed or additional action by the ALJ is required.  On remand, the ALJ shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.  20 C.F.R. § 404.977.

gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520, 416.920 (2013).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.*  §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* § 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to

perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since July 18, 2007[2] (Tr. at 26).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of mild degenerative spurring of the lumbosacral spine with low back pain; status post right shoulder dislocation with calcific tendonitis/subacromial bursitis; epilepsy/seizure disorder; alcohol abuse/dependence; major depressive disorder; anxiety disorder/panic disorder; borderline intellectual functioning; and personality disorder with dependent traits (Tr. at 26).  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 28).  The ALJ then found that Claimant has a Residual Functional Capacity (RFC) for light work, reduced by nonexertional limitations[3] (Tr. at 31).  Claimant has no past relevant work experience of significance (Tr. at 42).  Nevertheless, the ALJ concluded that Claimant could perform jobs such as hand packer, assembler, price marker and small parts assembler (Tr. at 42-43).  On this basis, benefits were denied.

---

[2] Although supplemental security income is not payable prior to the month in which the application was filed (20 C.F.R. § 416.335), the ALJ considered the complete medical history consistent with 20 C.F.R. § 416.912(d) (Tr. at 24).

[3] Claimant has the residual functional capacity to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently in light work as defined by the Regulations.  He may occasionally climb ramps and stairs, bend, balance, stoop, kneel, crouch and crawl, but may never climb ladders, ropes and scaffolds.  He must be allowed to sit or stand at will provided he is not off task more than 10% of the work period.  He may occasionally reach overhead and engage in pushing and pulling activities, with the dominant right upper extremity.  He must avoid concentrated exposure to extreme cold, vibration and irritants such as fumes, odors, dust, gases, chemical and poorly ventilated spaces.  He must avoid all exposure to hazards such as moving machinery or unsecured heights.  He is fully capable of learning, remembering and performing simple work instructions and which are performed in a low stress work environment, defined as one in which there is no production pace, no strict quota requirements, no strict time standards and no "over the shoulder" supervision.  He may have occasional contact with supervisors and coworkers, but should have minimal to no contact with the general public (Tr. at 31).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 16, 1961. Claimant obtained his GED in 1976 (Tr. at 392). Claimant asserts disability beginning July 15, 2000. Claimant had a driver's license which was revoked in 2002 (Tr. at 39). Claimant has had 3 DUI arrests. He reports as many as 40 arrests for public intoxication. Claimant reported that he prepares his own meals, cleans one load of laundry a week, folds the laundry and takes out the trash (Tr. at 493). Claimant goes shopping for basic needs approximately once a

month (Tr. at 494). Claimant can count change. Claimant reported "watching tv" as his interests and reported his social life to consist of spending time with friends on the phone and going to a friend's house (Tr. at 495).

Claimant reported on his Social Security Administration Function Report that he needs to be reminded to go places. Claimant stated that he can pay attention up to one hour if it is important (Tr. at 496). Claimant reported to getting along with authority figures and handling change of routine well if it isn't too complicated (Tr. at 496-497). At the administrative hearing, Claimant asserted that since the beginning of 2008, he had tapered his substance abuse. Claimant asserted at the administrative hearing that he was completely clean from illegal drugs and alcohol (Tr. at 112). Claimant asserted that his "seizure disorder" had improved (Tr. at 112). Claimant alleged to suffer from "shoulder problems" which affect his ability to lift, push, pull and reach. The medication Claimant takes to treat his insomnia is effectively helping him sleep. Claimant is under physical therapy for his "ankle problems" and to treat back pain. Claimant alleges that he suffers from a constant headache. (*Id.*)

Claimant asserted that he sees a psychiatrist, Alexander Otellin, M.D., for his depression once a month for the past 6 months. Claimant further asserted that his psychiatrist's opinion that Claimant's short-term memory is intact, "is really not correct" (Tr. at 113). Claimant alleges that he suffers from crying spells, fatigue and loss of appetite due to depression. Claimant asserts at the administrative hearing that his seizures, memory problems and depression have caused the Claimant to no longer drive. Claimant acknowledges that his lack of driving is "at least partially the consequence of his years of heavy substance abuse, but he's definitely got some cognitive problems." (*Id.*)

6

On direct examination, Claimant testified that he does not consume alcohol or illegal drugs (Tr. at 113-114).  At the time of the administrative hearing, Claimant testified that he was living with his ex-wife, Bridgett Bennett.  He testified that he had been living with her for "a few months" (Tr. at 118).  Claimant couldn't remember how many years they have been divorced.  Claimant testified that she is helping him by giving him a place to live and he is helping her out because he receives food stamps and buys food for them.  He testified that they go grocery shopping together (Tr. at 119).  They take turns carrying the groceries from the store to her house approximately 6 blocks away.  (*Id.*)  Claimant stated they have to stop and rest during the trips from Kroger's to Ms. Bennett's house.

Claimant testified that he uses a cane due to arthritis in his ankle.  Claimant testified to difficulty lifting heavy items.  He stated that he uses both hands to pour a glass of milk out of a gallon (Tr. at 122).  Claimant testified that he takes the prescription Imitrex when he experiences a migraine headache and the prescription "works fine" (Tr. at 124).

Claimant testified to feeling depressed because he feels responsible for his mother's death.  Claimant asserts that he cries often and does not have energy.  He testified that his typical day involves watching television and cleaning the house (Tr. at 125).  Upon questioning by the ALJ, Claimant testified that he "can't get out and look for a job" (Tr. at 130).  Claimant testified that he would drink some beer, not liquor (Tr. at 131).  Claimant testified that he had completely stopped drinking alcohol for the previous 3 months.

<u>Medical Background</u>

Kay Collins-Ballina, M.A., interviewed Claimant during a West Virginia Disability Determination Service Mental Status Examination dated August 27, 2007 (Tr. at 794-798).  Claimant was the only source of information for the evaluation and Dr. Collins-Ballina considered him "partially credible" (Tr. at 794).  Claimant reported that he was applying for disability benefits because "he suffers from panic attacks, arthritis, epilepsy and a history of one heart attack that occurred approximately in 2003."  Claimant also reported that he had previous suicidal ideations and several previous attempts.  Claimant reported that he drank six cans of beer the evening before the evaluation, however, Dr. Collins-Ballina noted that Claimant "did smell of alcohol but he did not appear intoxicated during the evaluation."  Claimant reported that he had used marijuana and alcohol in the past.  Claimant reported that his last day of employment was in 2004 stocking shelves at Big Lots (Tr. at 796).  Claimant reported he helps out with household chores by washing the dishes and vacuuming. Claimant reported he had received approximately 40 public intoxication citations (Tr. at 797).

Dr. Collins-Ballina's Mental Status Examination diagnostic impression included alcohol abuse and anxiety disorder. (*Id.*)  Dr. Ballina's long-term prognosis for Claimant was fair with treatment and intervention.  On September 21, 2007, Holly Cloonan, Ph.D., performed a psychiatric review and recommended a Residual Functional Capacity assessment based upon Claimant's anxiety-related disorders and substance addiction disorder (Tr. at 799).  Claimant's functional limitations were rated by Dr. Cloonan as mild in activities of daily living; moderate in maintaining social functioning; and maintaining concentration, persistence or pace.  Claimant had no episodes of decompensation (Tr. at 809).  Claimant did not satisfy the C criterion for Listing 12.06,

anxiety-related disorders (Tr. at 810).  Dr. Cloonan reported that Claimant's "condition does not meet or equal listing level severity.  He is able to learn and perform unskilled work-like activities with low productivity demands in a workplace environment with few distractions and limited interactions with others" (Tr. at 815).

On December 11, 2007, Marcel Lambrechts, M.D., a State agency medical expert, reviewed the evidence of record and reported that, except for alcohol abuse and a history of seizures that had not recurrent in 4 years, there was no evidence of a severe physical impairment (Tr. at 845-853).  On December 20, 2007, Navjeet Singh, M.D., a State agency medical expert, reviewed the evidence of record and opined that, from a neurological perspective, he agreed with the State agency consultant's opinion that Claimant's current impairment was non-severe (Tr. at 853).

On March 20, 2008, Timothy Saar, Ph.D., a State agency medical expert, reviewed the evidence of record and opined Claimant had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensations.  Dr. Saar felt Claimant was able to learn and perform a variety of repetitive work-like activities that involved minimal public contact (Tr. at 862-879). The ALJ found this opinion consistent with the evidence of record and gave it significant weight (Tr. at 40).

On August 23, 2008, Sheila Emerson Kelly, M.A., completed a Mental Residual Functional Capacity assessment and opined that Claimant had marked limitations in his ability to understand, remember and carry out detailed instructions; maintain attention for extended periods; maintain regular attendance and be punctual within customary tolerances; accept instructions and respond appropriately to criticism from supervisors;

and set realistic goals or limitations in his ability to sustain an ordinary routine without special supervision, work in coordination or proximity to others without being unduly distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms and the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to change in the work setting and travel in unfamiliar places or use public transportation (Tr. at 999-1009).

During his Mental Residual Functional Capacity assessment with Dr. Kelly, Claimant reported to attending West Virginia Career College "because [he] had a trust fund and the only way [he] could get [his] money was to go to school" (Tr. at 1000). Claimant's IQ scores consisted of a 77 in verbal IQ, 73 in performance IQ, 73 in full scale IQ, 72 in verbal comprehension index and 74 in perceptual organization index (Tr. at 1003). Dr. Kelly reported Claimant competent to manage his own financial affairs as long as he was sober (Tr. at 1005). Dr. Kelly noted that she had no medical records to substantiate the information Claimant was reporting to her. (*Id.*) The ALJ afforded no weight to the opinion of Ms. Kelly as she relied heavily on Claimant's self-reported symptoms and limitations (Tr. at 41).

On June 14, 2010, Claimant was seen by Charleston Area Medical Center's Emergency Department (Tr. at 1270). Claimant reported to being upset with his brother and starting a knife fight. Claimant sustained laceration to the second digit on his right hand. Claimant complained of left rib pain. (*Id.*) Claimant denied any abdominal or back pain. Claimant reported that he had been drinking ethanol (ETOH) but he was

"not drunk." Claimant denied recreational drug use. Michael G. Sitler, M.D., noted that Claimant appeared intoxicated (Tr. at 1271).

On June 16, 2010, Jeff Boggess, Ph.D., a State agency medical expert, reviewed the evidence of record and opined Claimant had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation (Tr. at 1162-1180). The ALJ held that Dr. Boggess' opinion was consistent with the evidence of record and given significant weight (Tr. at 41).

During an office visit regarding migraine headaches on September 1, 2010, with Darshan Dave, M.D., with Neurology & Headache Clinic PLLC, Claimant's gait, appearance and judgment were reported as normal (Tr. at 1338). Dr. Dave's office visit notes from December 15, 2010, and March 15, 2011, reported Claimant's orientation, memory, attention span and concentration, mood, judgment, insight, strength in both upper extremities and lower extremities and gait as normal (Tr. at 1340, 1342).

Psychiatrist Alexander Otellin, M.D., started seeing Claimant on September 29, 2010. Dr. Otellin diagnosed Claimant with recurrent severe depressive disorder and panic disorder with angoraphobia. Claimant denied suicidal ideas. Claimant's affect was noted as appropriate to verbal content. Claimant's associations were intact, thinking was logical and thought content was appropriate. Cognitive functioning was intact and age appropriate. His short and long term memory was intact, as was his ability to abstract and do arithmetic calculations. Claimant was fully oriented with fair insight into his illness. His social judgment was reported as intact. Dr. Otellin reported no signs of hyperactive or attention difficulties. Claimant's muscle strength, muscle tone, gait and station were all normal (Tr. at 1288).

11

Dr. Otellin saw Claimant again on October 20, 2010. Dr. Otellin reported Claimant's mental status to reveal no serious mental abnormalities. Claimant exhibited neither depression nor mood elevation. Claimant's memory was intact for recent and remote events and he was oriented to time and place. Dr. Otellin noted there were no signs of anxiety. Claimant's judgment and insight were intact. His muscle strength, muscle tone, gait and station were all normal (Tr. at 1291).

On October 18, 2010, Claimant visited Family Care for a flu shot (Tr. at 1350). During the visit, Claimant complained of leg and shoulder pain. His chief complaint was that he needs medication because he was out of his prescribed Flexeril and Ultram 12 days earlier. Gai Smythe, M.D., noted that based on Claimant's statement, Claimant would have had to take 13 pills a day. Dr. Smythe reported that Claimant only mentioned taking Flexeril for "nerve" medicine even though Dr. Otellin had prescribed him Valium. (*Id.*) Dr. Smythe listed Claimant as not working. Claimant had stated he was "not allowed to work right now" because he was "going through a disability suit." Claimant claimed to be surviving on food stamps and performing odd jobs for people. Claimant denied experiencing headaches (Tr. at 1351). Dr. Smythe assessed Claimant as experiencing shoulder joint and ankle pain (Tr. at 1352). Dr. Smythe noted Claimant as appearing credible, then reported Claimant was difficult to communicate with regarding overusing Ultram and Flexeril. Claimant kept saying the prescriptions didn't help with the pain "no matter how many he took," yet Claimant kept taking the prescriptions. (*Id.*)

Claimant returned to Family Care on December 6, 2010, for a pain management follow-up visit (Tr. at 1353). Claimant complained of back pain that "really hurts when he does dishes." Dr. Smythe's assessment included backache, ankle pain and

depression.  On January 10, 2010, Claimant returned to Family Care for a follow-up visit (Tr. at 1356).  Claimant's chief complaint was that he needed a stronger prescription for pain than Ultram.  Claimant reported that his shoulder pain wasn't "bothering him so much.  Mostly it's the back."  (*Id.*)  Claimant stated "My body hurts all over."  Under physical examination, Claimant was alert and oriented with no apparent signs of distress.  Dr. Smythe prescribed Claimant Hydrocodone for pain (Tr. at 1357).

Although Claimant has hepatitis C, he testified that he has not started hepatitis C treatment as Bassam Haffar, M.D., had instructed Claimant to consider as soon as Claimant stopped drinking ethanol (ETOH)[4] (Tr. at 1337).  Dr. Haffar instructed Claimant to stop drinking ETOH during Claimant's February 7, 2011, office visit.

Family Care's Visit Note dated February 18, 2011, listed Dr. Haffar as Claimant's gastrointestinal physician, Dr. Dave as Claimant's Neurologist and Dr. Smythe as the physician managing Claimant's pain treatment (Tr. at 1358).  The Visit Note stated that Claimant doesn't think Lortab is enough.  Claimant's gait, stance, orientation, mood/affect, memory and insight/judgment were marked as normal.  Claimant had a pain management follow-up appointment with Family Care on March 28, 2011 (Tr. at 1360).  Claimant's chief complaint was that he needed a refill for Lortab.  Claimant was advised to make an appointment for physical therapy.  Claimant could start physical therapy as soon as the next day.  Claimant's mood and affect were normal.  Claimant was alert and oriented with no apparent signs of distress.  Claimant reported to being an alcoholic as a teenager and denied any history of drug abuse.  (*Id.*)

Family Care's Visit Note dated May 18, 2011, reported Claimant's chief complaint as worsening left ankle pain (Tr. at 1362).  It was noted that Claimant was taking

---

[4] Ethanol is also called pure alcohol, grain alcohol or drinking alcohol.

Vicodin for back pain.  On May 19, 2011, Dynamic Physical Therapy reported that claimant had attended 10 visits since March 13, 2011 (Tr. at 1363).  Claimant's gait quality and speed had improved, as well as his strength.

At the administrative hearing, Claimant self-reported going grocery shopping with his ex-wife, Ms. Bennett, and performing chores around the house.  Claimant reported to preparing meals.  Ms. Bennett testified that she and Claimant clean the house (Tr. at 141).  Ms. Bennett testified that Claimant has poor balance, daily falls asleep daily  in a chair while watching tv and a poor memory which requires her to make a list of items to retrieve from the store whenever they need more than 2 to 3 items (Tr. at 137).  Ms. Bennett testified that claimant does not drink and has not drank for the previous 3 months (Tr. at 143).   The ALJ gave little weight to Ms. Bennett's testimony because she has an "inherent interest in the outcome of the claim" (Tr. at 42).

Claimant's Challenges to the Commissioner's Decision

Claimant argues the Commissioner's decision was not based on substantial evidence as the ALJ did not properly evaluate the testimony of Bridget K. Bennett, Claimant's ex-wife (ECF No. 11).  The Commissioner asserts that substantial evidence supports the ALJ's RFC assessment and treatment of lay testimony of Claimant's ex-wife, which was unsupported by the objective medical evidence or record (ECF No. 14).

Order of the Appeals Council

The Appeals Council instructed the ALJ to further evaluate the nature and severity of Claimant's impairments; give consideration to nontreating source opinion and nonexamining source opinion and explain the weight given to such opinion evidence; give further consideration to Claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record

14

in support of the assessed limitations; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Claimant's occupational base (Tr. at 184-188).

The Court's review of the ALJ's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the ALJ and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *See, Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). If substantial evidence supports the ALJ's decision, a court must affirm, even if it would have decided the case differently or if substantial evidence would support an opposite conclusion. *Perales*, 402 U.S. 390, 401 (1971).

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2013); 20 C.F.R. § 404.1520a (a) (2013). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2013). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2013). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006). Functional limitation is rated with respect to four broad areas (activities of daily living; social functioning; concentration,

persistence or pace; and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2013).  The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme.  The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2013).  A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2013).  Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2013).  Fifth, if a mental impairment is "severe" but does not meet the criteria in the 20 C.F.R., Part 404, Subpart P, Appendix 1 listings, the ALJ will assess the claimant's residual functional capacity.  §§ 404.1520a(d)(3) and 416.920a(d)(3) (2013).  The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2013).

The ALJ found that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of 20 C.F.R. 404 Subpart P, Appendix 1, Listing §§ 12.02, 12.04, 12.05, 12.06, 12.08 and 12.09 (Tr. at 29).[5]  The ALJ

---

[5] The listings include organic medical disorders; schizophrenic, paranoid and other psychotic disorders; affective disorders; mental retardation; anxiety related disorders; personality disorders; and substance addiction disorders. *See* 20 C.F.R. 404 Subpart P, Appendix 1, Listing §§ 12.02, 12.04, 12.05, 12.06, 12.08 and 12.09.

held that paragraph B criteria, also referred to as paragraph D criteria of listing 12.05, was not satisfied (Tr. at 30).  To satisfy the criteria in paragraph B of listings 12.02, 12.04, 12.06, 12.08 and 12.09, the mental impairments must result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.  To satisfy the criteria in paragraph D of listing 12.05, requires at least two of the same marked limitations stated above, as well as, a valid verbal, performance or full scale IQ of 60 through 70.

The ALJ found that Claimant had mild restriction in activities of daily living; moderate difficulties in social functioning, concentration, persistence and pace; and no episodes of decompensation (Tr. at 29-30).  The ALJ also found that Claimant's mental impairments failed to satisfy paragraph C criteria of listings 12.02, 12.04, 12.06, 12.08 and 12.09 (Tr. at 30).  The ALJ further noted that there was not evidence of a chronic mental disorder resulting in inability to function independently outside the area of Claimant's home (Tr. at 31).

Claimant failed to satisfy paragraph B criteria for mental impairment listing 12.05 because Claimant did not have a valid verbal, performance or full scale IQ of 59 or less.  As for paragraph C criteria of listing 12.05, the ALJ found that Claimant did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or

17

other mental impairment imposing an additional and significant work-related limitation of function.

After careful consideration of the evidence, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his Residual Functional Capacity Assessment (Tr. at 33).   The ALJ found Claimant's allegations that he is incapable of all work activity not credible because of significant inconsistencies in the record as a whole. Although Claimant testified that he stopped drinking approximately 3 months prior to the hearing, the ALJ reported that Claimant appeared somewhat intoxicated at the hearing, slurring his speech at times (Tr. at 39).  The ALJ found Claimant and Ms. Bennett's testimonies overall were "simply not credible."

Claimant testified that he needed the assistance of a cane at all times due to arthritis and pain in his ankle.  Multiple doctors note during physical examinations and office visits that Claimant's gait and ambulation were normal.  A review of the medical records showed the use of a cane was not recommended by any physician.  Claimant's self-reported need for the use of a cane for his ankle impairment is not based on a medical necessity on the record.  A medically determinable impairment is a medical condition that can be shown to exist by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§ 404.1508 and 416.908.  Social Security Regulations specifically require that impairment be established by medical evidence that consists of signs, symptoms and laboratory findings, and not only by an individual's statement of symptoms.   Although the record did evidence subjective complaints by Claimant

regarding his ankle impairment and pain, the ALJ concluded that the alleged left ankle impairment was not medically determinable.

Claimant's low back pain was evaluated under section 1.04 of the Listings of Impairments.  Claimant failed to meet the criteria of section 1.04 in that there is no compromise of a nerve root or the spinal cord.  There was no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation or motion of the spine or motor loss accompanied by sensory or reflex loss and there was no positive straight-leg raising test.  Claimant did not present lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness and resulting in inability ambulate effectively.  The medical records indicate on numerous occasions that Claimant's gait appeared normal.

Claimant's shoulder impairment failed to meet the criteria of section 1.02(B).  There was no evidence of a major dysfunction of a joint characterized by gross anatomical deformity.  There was no evidence of chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint with involvement of one major peripheral joint.  Claimant failed to demonstrate the affected joint was unable to perform fine and gross movements effectively, defined as an extreme loss of function of both upper extremities.

<u>Vocational Expert</u>

Vocational expert (VE), Nancy Shapero, testified at the administrative hearing (Tr. at 144-154).  Although Claimant has worked, he has never worked at the substantial gainful activity level (Tr. at 147).  The ALJ instructed the VE to assume a hypothetical

individual of Claimant's age, education and work experience; who is able to lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently; and light work as defined by the Regulations.  The ALJ stated this individual may occasionally climb ramps and stairs, bend, balance, stoop, kneel, crouch and crawl; but may never climb ladders, ropes and scaffolds.  This individual must be allowed to sit or stand at will, provided he is not off task for more than 10 percent of the work period.  This person may occasionally reach overhead and engage in pushing and pulling operations, with the dominant right upper extremity.  This individual must avoid concentrated exposure to extreme cold, vibration, irritants such as fumes, odors, dusts, gasses, chemicals and poorly ventilated spaces.  He must avoid all exposure to hazards such as moving machinery and unsecured heights.  This individual is fully capable of learning, remembering and performing simple, routine and repetitive one – and two – step work tasks involving simple work instructions and which are performed in a low-stress work environment, which the ALJ defined as one in which there is no production pace, no strict quota requirements, no strict time standards and no over-the-shoulder supervision.  This person may have occasional contact with supervisors and coworkers, but should have minimal to no contact with the general public.  If we take into consideration a hypothetical individual with Claimant's vocational data and those hypothetical limitations, would there be jobs in the regional or national economy a person so limited could perform?

VE Shapero testified that based on the hypothetical, the individual could perform the light work necessary for positions of hand packer, assembler and price marker (Tr. at 149).  The ALJ then instructed VE Shapero to consider the exact same hypothetical as

previously stated, but now, assume the hypothetical individual is limited to sedentary work as defined by the Regulations, with the same limitations.  The ALJ asked VE Shapero under those circumstances, would work be able for such a person?  VE Shapero answered under sedentary work, the hypothetical individual could perform small parts assembly and the position of handpacker.  Pursuant to SSR 00-4[6], the Vocational Expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

---

[6] Social Security Ruling 00-4p:  Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:  February 3, 2014

Dwane L. Tinsley
United States Magistrate Judge