IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTOPHER A. SMITH,

        Plaintiff,

v.                                           CIVIL ACTION NO.   2:13-cv-00571

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Christopher A. Smith's Complaint seeking review of the decision of the Acting Commissioner of Social Security ("Commissioner") [ECF 2].  By Standing Order entered September 2, 2010, and filed in this case on January 14, 2013, this action was referred to former United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation ("PF&R").  Following Magistrate Judge Stanley's retirement, this action was referred on April 8, 2013, to United States Magistrate Judge Dwane L. Tinsley. Magistrate Judge Tinsley filed his PF&R [ECF 16] on February 3, 2014, recommending that this Court deny Plaintiff's brief in support of judgment on the pleadings [ECF 11], affirm the final decision of the Commissioner, and dismiss this matter from the Court's docket.

Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has been made.  The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation

to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F .2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Plaintiff filed timely objections to the PF&R on February 12, 2014. For the reasons that follow, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's objections.

## I. BACKGROUND

The facts concerning this matter are more fully set forth in the PF&R. In short, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on July 18, 2007. On August 13, 2008, a hearing before administrative law judge ("ALJ") John W. Rolph was conducted. (ECF 9–3 at 2). By written decision dated October 10, 2008, ALJ Rolph found that Plaintiff was not disabled. (ECF 9–4 at 28.) Plaintiff appealed the ALJ's unfavorable decision to the Social Security Administration's Office of Disability Adjudication and Review ("Appeals Council"). By written correspondence dated May 27, 2010, the Appeals Council denied review of Plaintiff's disability benefits claim (ECF 9–4 at 35), but vacated the ALJ's decision with respect to Plaintiff's supplemental security income and remanded that claim to the ALJ for further evaluation (*Id.* at 32). Following remand, ALJ Rolph conducted a hearing on May 24, 2011, pursuant to the Appeals Council's order on Plaintiff's supplemental

2

security income claim.[1] (ECF 9–3 at 54–155.) ALJ Rolph issued an unfavorable written Decision on June 15, 2011, denying Plaintiff's claim for supplemental security benefits. (ECF 9–2 at 24–55.)

## II. PLAINTIFF'S OBJECTION

Plaintiff makes one specific objection to the PF&R. He contends that the magistrate judge failed to address his argument that he had set forth in his brief in support of judgment on the pleadings, namely, that the ALJ failed to properly evaluate the lay testimony of Bridget Bennett, Plaintiff's ex-wife. (ECF 17 at 1.) Plaintiff contends that this was his principal argument in the proceedings before the magistrate judge, and the magistrate judge did not examine the argument in the PF&R.

## III. STANDARD OF REVIEW

The Court has a narrow role in reviewing claims brought under the Social Security Act. This Court is authorized to review the Commissioner's denial of benefits, as set forth by his designee, the ALJ, under 42 U.S.C. §§ 405(g) and 1383(c)(3). Its review is limited to determining whether the contested factual findings of the Commissioner are supported by substantial evidence and were reached through application of correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401

---

[1] During the pendency of Plaintiff's appeal of ALJ Rolph's original decision to the Appeals Council, Plaintiff filed a subsequent supplemental security income claim, which was a duplicate of the pending supplemental security income claim. At the May 24, 2011, hearing ALJ Rolph associated the two claims and his June 5, 2011 Decision was based on both of these claims. (ECF 9–2 at 24.)

3

(1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

If substantial evidence exists, the Commissioner's final decision must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays*, 907 F.2d at 1456). Assuming error by the Commissioner, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached by the ALJ. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that 'an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained,' reversal is not required where the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached. . . .'") (citations omitted).

## IV. DISCUSSION

The Court has reviewed the PF&R and Plaintiff's brief in support of judgment on the pleadings. In his brief, Plaintiff's sole issue and primary argument pertained to the ALJ's evaluation of the testimony of Bridget Bennett, Plaintiff's ex-wife, and the ALJ's determination that Ms. Bennett's testimony was entitled to little weight. (ECF 11 at 12–18.) Plaintiff is correct that the PF&R contains no analysis of Plaintiff's claim. Accordingly, the Court **SUSTAINS IN PART** Plaintiff's Objection in this regard and will conduct an independent de novo review of the objection.

The heart of Plaintiff's claim is that the ALJ summarily rejected Ms. Bennett's testimony on the basis that, as characterized by Plaintiff, she "may have a financial or familial stake in the outcome of the case." (*Id.* at 14.) Plaintiff argues that the Social Security regulations expressly require an ALJ to consider non-medical sources of evidence such as family members, relatives, friends, and other types of lay witnesses. Plaintiff reasons that if an ALJ were automatically permitted to reject such witnesses' testimony solely on the basis of their "financial or familial stake in the outcome of the case," then such witness testimony would always be discounted. Plaintiff cites non-binding, out-of-circuit authority—primarily from the Court of Appeals for the Ninth Circuit—in support of his contention. (*Id.* at 14.) He claims this error was "critical to the outcome of this case" and that the Court should therefore remand the case to the Commissioner.

Plaintiff's argument lacks merit. At the May 24, 2011, administrative hearing, three witnesses testified and extensive documentary evidence was made a part of the record. Plaintiff tendered his own testimony and the testimony of Ms. Bennett in support of his claim. Their testimony was followed by the testimony of the vocational expert.

Plaintiff testified that he had been living with his ex-wife, Bridgett Bennett, for the past three months in her home. (ECF 9–3 at 64–66.) He stated that he received food stamps and "I buy food so she—you know, I can eat, and she can eat." (*Id.* at 65.) They sleep in separate rooms. (*Id.*) He moved in with Ms. Bennett because she was "helping him out with a roof over my head, and a place to sleep. And you know, like I'll buy food, and she'll cook or whatever. . . ." (*Id.*) The pair walks to the grocery store together. (*Id.*) He claimed that he "finished completely" drinking alcohol about three months ago and that he is not allowed to drink in Ms. Bennett's house. (*Id.* at 77–78.)

5

Plaintiff also testified about his numerous physical and mental limitations, which included ankle, shoulder, and lower back pain, arthritis in his ankle, fatigue, lack of physical strength, paranoia, seizures, migraines, depression, mood swings, constant heartburn, high blood pressure, insomnia, memory and breathing problems, hepatitis C, and a history of alcohol abuse. (*Id.* at 60–75.) Plaintiff stated that he attends physical therapy, but that he is exhausted after the sessions end. (*Id.* at 63.) He testified that he had been seeing a psychiatrist on a monthly basis for his depression over the past four months, each session lasting about fifteen to twenty minutes. (*Id.*) He claimed he experienced feelings of paranoia and that when he leaves his house "I look all around, and I'm scared to death. That's why I stay in most of the time." (*Id.* at 64.) He claimed that when he makes the six-block walk to the grocery store he has to stop and rest once, and more than once on the return walk home. (*Id.* at 66–67.) He claimed that his 2008 shoulder dislocation "is killing me still yet." (*Id.* at 67.) He stated that he used a cane due to arthritis in his ankle, a condition that causes him balance problems. (*Id.* at 68.) He claimed that he "can't hardly" walk even with the cane. (*Id.*) He stated that he has not had a grand mal seizure in "a while", but that he has "little seizures . . . quite frequently." (*Id.* at 69.) When the "little seizures" happen, Plaintiff is "in a daze . . . in another world or something." (*Id.*) He stated that he doesn't try to lift anything, and that "it takes me two hands to pour me a glass of milk out of a gallon jug" because he cannot hold the jug. (*Id.*) He could stand only about ten minutes at a time and sit only for a half-hour without pain. (*Id.* at 70.) He was able to effectively treat his migraine headaches with medication. (*Id.* at 71.) He had crying spells and no energy. (*Id.*) A typical day was "sitting around the house watching television[,] [o]r trying to help [Ms. Bennett] clean the house . . . ." (*Id.* at 72.) He regularly dozes off when he watches television. (*Id.* at 72–72.) He

6

experiences heartburn "all the time." (*Id*. at 73.) He takes a variety of medications for his various problems. (*Id*. at 73–75.)

Following Plaintiff's testimony, Ms. Bennett testified. Ms. Bennett stated that she and Plaintiff have been divorced since 1996 and only recently "became friends." Plaintiff moved into her home three months ago. (*Id.* at 84.) Prior to moving in, Ms. Bennett only had "a little bit" of contact with Plaintiff. (*Id.* at 90.) Ms. Bennett received disability benefits because of her panic attacks, anxiety, and her knees. (*Id.* at 92.)

Ms. Bennett opined that Plaintiff would not be able to work a full-time job because Plaintiff had memory problems, and that she had to write everything down for him. (*Id.* at 85.) She stated that Plaintiff had one or two grand mal seizures when he first moved in, and had one or two smaller seizures every day. (*Id.* at 86–87.) She demonstrated in the courtroom how Plaintiff reacted when he had a seizure. (*Id.* at 86–87.) Ms. Bennett stated that Plaintiff tries to help out cleaning the house, but sits down when he runs the vacuum cleaner. (*Id.* at 88.) He watches television and dozes off. (*Id.*) He frequently trips. (*Id.* at 88–89.) He walks in circles. (*Id.* at 89–90.) He cries on a daily basis. (*Id.* at 90.) She testified that she would not permit Plaintiff to drink alcohol while he lived in her home. (*Id.* at 91.)

ALJ Rolph issued his written Decision denying supplemental security income benefits to Plaintiff on June 15, 2011. (ECF 9–2 at 24–55.) In rendering his twenty-two page Decision, ALJ Rolph engaged in the five-step sequential evaluation process for determining whether Plaintiff was disabled within the meaning of the Social Security regulations. The Decision contained a thorough recitation of Plaintiff's and Ms. Bennett's testimony. (*Id.* at 33–34.) ALJ Rolph found that Plaintiff had a variety of severe impairments under the regulations. (*Id.* at 27.)

7

ALJ Rolph found, however, that Plaintiff had the residual functional capacity ("RFC") to perform light work, as that phrase is defined under the regulations, with certain stated restrictions. (*Id.* at 32.) In making this finding, ALJ Rolph reviewed the testimony of Plaintiff and Ms. Bennett. (*Id.* at 33–34.) ALJ Rolph stated that he found Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms "not credible to the extent they are inconsistent" the RFC assessment. (*Id.* at 34.) ALJ Rolph then explained in great detail his reasons for this adverse credibility finding, contrasting Plaintiff's testimony with evidence contained in the medical record. (*Id.* at 34–54.) Among other things, ALJ Rolph noted that the medical record did not support Plaintiff's testimony concerning the frequency of his "little seizures" and that the seizure disorder was controllable with alcohol abstinence. (*Id.* at 36–37.) In this discussion, the ALJ specifically noted Ms. Bennett's demonstration during her testimony of Plaintiff's physical reaction to the seizures. (*Id.* at 37.) Immediately thereafter, ALJ Rolph stated that "the evidence of record as a whole indicated that the claimant's seizure disorder was controllable given compliance with [the] treatment regime, including alcohol abstinence." (*Id.*) ALJ Rolph also described the evidence concerning Plaintiff's extensive history of alcohol abuse, including three DUI arrests and approximately 40 arrests for public intoxication, and his past unsuccessful efforts to stop drinking. (*Id.* at 40.) ALJ Rolph stated that Plaintiff appeared "somewhat intoxicated" at the administrative hearing as evidenced by Plaintiff's occasional slurred speech. ALJ Rolph then stated, "His testimony overall was simply not credible. Nor was the testimony of his former spouse." (*Id.* at 40.)

At the end of the extensive discussion of Plaintiff's credibility, ALJ briefly referenced Ms. Bennett's testimony. ALJ Rolph stated, "Given her inherent interest in the outcome of the claim,

the undersigned considered but gave little weight to the testimony of the claimant's ex-wife."  (*Id.* at 43.)

At the outset, the Court rejects Plaintiff's contention that the ALJ's sole explanation of his reasons why he discounted Ms. Bennett's testimony was confined to his "inherent interest" remark.  First, as noted above, ALJ Rolph thoroughly summarized Plaintiff's and Ms. Bennett's testimony and, with respect to Plaintiff's testimony, provided an extensive discussion why he discounted Plaintiff's testimony.  Although that part of the discussion focused on the ALJ's reasons for discrediting Plaintiff's testimony, the ALJ expressly referenced in that discussion Ms. Bennett's testimony when commenting on Plaintiff's testimony regarding the alleged frequency of his seizures and his abstinence from alcohol use.  In finding Plaintiff's testimony incredible regarding his seizures and referencing Ms. Bennett's graphic courtroom demonstration of how Plaintiff behaves when he has a seizure, it is plain that the ALJ necessarily rejected Ms. Bennett's evidence on this issue.  With respect to Plaintiff's alleged newfound sobriety, ALJ Rolph explicitly found that Ms. Bennett's testimony on this issue was not credible.  Thus, Plaintiff's assertion that the ALJ's only explanation of his reasons for rejecting Ms. Bennett's testimony was his statement that she had an "inherent interest" in the outcome of the claim is unfounded.

The substantive merits of Plaintiff's argument are equally unconvincing.  A close examination of Plaintiff's argument reveals that his claim of error is two-fold.   He argues that the ALJ erred in his evaluation of Ms. Bennett's testimony and also failed to adequately explain his reasons for affording her testimony little weight.

ALJ Rolph's analysis does not support Plaintiff's argument that the ALJ improperly evaluated Ms. Bennett's testimony.   At the outset, Plaintiff has not challenged the ALJ's adverse

credibility determinations of Plaintiff's testimony. This is notable because Plaintiff's testimony regarding his seizures and alcohol use—which ALJ Rolph discounted—paralleled Ms. Bennett's testimony on these same points. Thus, Plaintiff's claim of error, arguably, has no bearing on the substance of the ultimate disability decision.

The Court will, nonetheless, examine the merits of Plaintiff's claim. Plaintiff argues that the ALJ improperly rejected Ms. Bennett's testimony "solely" because the witness may have a financial or familial stake in the outcome of the case. (ECF 11 at 14.) Plaintiff correctly argues that the Commissioner considers non-medical, lay testimony when evaluating claims. *See, e.g.*, 20 C.F.R. §§ 404.1513(d), 416.913(d), SSR 96–7p, 1996 WL 374186 (S.S.A. 1996). And the Court, as a general matter, agrees with Plaintiff that the testimony of family members and friends, if credit-worthy, is often probative of a claimant's abilities and disabilities and should never be automatically rejected based solely on the kindred relation. *See Morgan v. Barnhart*, 142 F. App'x 716, 731 (4th Cir. 2005) (stating that an ALJ's automatic and *per se* rejection of a family member's observations is reversible error).

Plaintiff's reliance on *Smolen v. Chater,* 80 F.3d 1273, 1288–89 (9th Cir. 1996), which is not binding authority on this Court, but which was cited approvingly in *Morgan*, does little to advance his argument.[2] *Smolen* is distinguishable from this case in that the plaintiff there, whose alleged disability was based on pain and fatigue, had only "sparse" medical records that did not

---

[2] Plaintiff's other authorities are similarly unpersuasive because they do not squarely address the issue of familial witnesses who have direct financial interests in the outcome of the case. *See Regennitter v. Comm. of Social Sec. Admin*., 166 F.3d 1294, 1298 (9th Cir. 1999) (stating that the fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony; witnesses who see the claimant everyday are of particular value and. such lay witnesses will often be family members.) and *Behymer v. Apfel*, 45 F. Supp. 2d 654, 663–64 (N.D. Ind. 1999) (stating that "without some showing from the record that the testimony of a relative is biased or not credible, the mere fact that the witness is a relative is not enough to reject the testimony.").

10

adequately document her symptoms.  80 F.3d at 1288.  Thus, the testimony of the family witnesses in that case was the primary source of evidence to corroborate the plaintiff's claims.  Here, the medical evidence is not sparse.  Further, Plaintiff tendered medical reports that were favorable to his position, and Ms. Bennett's testimony, mostly, was corroborative of those particular reports.   While ALJ Rolph had an obligation to fully consider Ms. Bennett's testimony, which he did, her testimony was cumulative to some of the medical evidence of record and, thus, did not have the same central importance as the family members' testimony in *Smolen*.

More importantly, in *Smolen* the court of appeals criticized the ALJ's wholesale rejection of the family witnesses on the basis that they were "understandably advocates, and biased."  80 F.3d at 1289.  The court criticized this rationale because it

> amounted to a wholesale dismissal of the testimony of all the witnesses as a group and therefore does not qualify as a reason germane to each individual who testified. Moreover, the same could be said of any family member who testified in any case. The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.  To the contrary, testimony from lay witnesses who see the claimant every day is of particular value."

*Id.* (citation omitted).   Importantly, nowhere in the court's analysis is there any suggestion that an ALJ's rejection of a specific family member's testimony on the basis that he or she may have a direct personal *financial* interest in the claimant's disability award would be improper.  Thus, while Plaintiff's proposition that it is improper for an ALJ to reject lay witness testimony solely on the basis of a familial relation is supported by *Smolen*, his claim that *Smolen* prohibits an ALJ's rejection of a family witness's testimony on the basis that the witness stood to benefit financially is not.

Here, it is noteworthy that Ms. Bennett is *not* a family member.   Rather, she is an ex-wife who has been divorced from Plaintiff since 1996.  Ms. Bennett, who receives disability benefits,

11

only recently became "friends" with Plaintiff shortly before she permitted Plaintiff to move into her home. In so doing, she reaped an immediate, direct financial benefit. Plaintiff testified that he receives food stamps. (ECF 9–3 at 65.) He stated, "I buy food so she—you know, I can eat, and she can eat . . . she's helping me out with a roof over my head, and a place to sleep. And, you know, like I'll buy food, and she'll cook or whatever. . . ." (*Id*. at 65–66.) Thus, by testifying in support of Plaintiff, Ms. Bennett stood to directly benefit financially from a favorable decision on his claim. She was, thus, not merely an advocate for Plaintiff, but her testimony also directly advanced her own financial interests. Any bias in favor of Plaintiff does not solely arise from her personal relationship with Plaintiff, but rather because she had a financial interest in the outcome of the case. This is an age-old, classic, and proper ground for discounting any witness's testimony in any court of law.

The Court also rejects Plaintiff's contention that ALJ Rolph's explanation of his reasons for discounting Ms. Bennett's testimony was inadequate and merits a remand of this case. Contrary to Plaintiff's assertion, the Court does not have to speculate what ALJ Rolph meant when he stated that Ms. Bennett's testimony deserved little weight because of her "inherent interest in the outcome of the claim." (ECF 9–2 at 43.) Importantly, ALJ Rolph's "inherent interest" remark was not his sole comment on Ms. Bennett's credibility. Earlier in his discussion when he was explaining in great detail his many reasons for discounting Plaintiff's testimony, ALJ Rolph twice referenced Ms. Bennett's testimony. (*Id.* at 37, 40.) In one of those instances, ALJ Rolph expressly rejected Plaintiff's *and* Ms. Bennett's evidence regarding Plaintiff's abstention from alcohol. (*Id.* at 40.) In the other instance, which concerned the evidence about Plaintiff's seizures and Ms. Bennett's courtroom demonstration of the effects of the seizure on Plaintiff, the

ALJ necessarily rejected Ms. Bennett's testimony when he expressly rejected Plaintiff's testimony on the same point. (*Id.* at 37.) While it would have been helpful if the ALJ had expanded on his reasons for discounting Ms. Bennett's testimony, it is readily apparent from the review of his Decision and the testimony what the ALJ meant and why he afforded Ms. Bennett's testimony little weight. Any deficiency in his explanation is harmless error because it is apparent it had no bearing on the substance of the decision reached.

## V. CONCLUSION

For the reasons set forth above, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's objections, **ADOPTS** the PF&R to the extent it is consistent with this Memorandum Opinion and Order [ECF 16], **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** Plaintiff's Complaint [ECF 2]..

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 27, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE